ARANDES, PLAINTIFF AND RESPONDENT, *v.* BÁEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of San Juan, Section 1, in an action for the nullity of a designation of heirs and partition of inherited property.

No. 994.—Decided May 1, 1914.

PARTITION OF INHERITANCE—ERROR OF FACT.—Section 1048 of the Civil Code refers to an error of fact, and not to an error of law, in the designation of heirs who intervene in a partition of inherited property.

ID.—VOLUNTARY PAYMENT—ERROR OF LAW.—As a general rule a payment voluntarily made under an error of law is not recoverable.

ID.—USUFRUCTUARY SHARE—INTESTATE SUCCESSION.—When in accordance with the opinion that the widow is entitled to an usufructuary share in the intestate succession, which opinion prevailed until the contrary doctrine was laid down in the case of *Julbe* v. *Guzmán,* 16 P. R. R., 502, a partition is made of the inherited property in which the widow is awarded a certain sum of money in payment of said share, the said partition is not void because it is made under an error of law, nor is the award of such a nature as to warrant the restitution of the amount paid as an exception to the general rule above stated.

ID.—CONTRACT OF COMPROMISE—ERROR OF LAW.—When the parties to a deed of partition of inherited property also enter into a contract of compromise, the latter cannot be deemed void because of an error of law suffered by the parties.

ID.—INCONGRUENCY BETWEEN EVIDENCE AND COMPLAINT—CONTRACT OF COMPROMISE.—The evidence must be in harmony with the theory raised by the allegations of the complaint, and when the complaint prays only for the nullity

of the designation of heirs and the partition of the inherited property, there exists an incongruency between the evidence and the complaint when it results from the former that a contract of compromise is involved.

The facts are stated in the opinion.

*Mr. José E. Benedicto* for the appellant.

*Mr. José Martínez Dávila* for the respondent.

MR. JUSTICE WOLF delivered the opinion of the court.

The complaint in this case sets up that the complainant, José Arandes, in union with his brother, Francisco Arandes, and the children of their deceased sister, Amalia Arandes Virella, were declared heirs of their mother, Clara Virella, by the District Court of San Juan.

That on February 18, 1909, Estebanía Báez obtained a declaration of heirship on the estate of her husband, Ramón Arandes, in favor of his mother, Clara Virella, and in favor of the petitioner, said Estebanía Báez, as widow, for her usufructuary share.

That at the same time José Arandes (the complainant in the present suit) obtained a declaration of the incapacity of his mother and was appointed her tutor, but alleged that he did not intervene as her tutor in the heirship proceedings.

That on the 28th of May of the same year the District Court of San Juan approved the partition of the estate left by Ramón Arandes Virella, made before Notary Julio César González on the first of April of the same year and in which there was adjudged to Estebanía Báez the sum of $2,500 in accordance with the rights as they appeared in the declaration of heirship, the said Estebanía Báez having received the said sum in payment.

That said Ramón Arandes died in 1909.

And it was prayed that the court should annul the declaration of heirship and the partition and that there should be returned to the complainant as heir of such Clara Virella the third part of the amount that was unduly adjudged to Estebanía Báez, with costs.

The answer admitted some of the facts of the complaint

but set up that the court had intervened in all necessary acts and contracts and that the complainant, as tutor of his mother, had accepted the declaration of heirship, the interested parties having acted by common consent with fraud or deceit; that the defendant in 1910 renounced her rights to her usufructuary share in the estate of Ramón Arandes in favor of Clara Virella, represented in the matter by her tutor, José Arandes, the complainant in this case.

At the trial it transpired that José Arandes intervened and gave his consent to all necessary proceedings as tutor of his mother; that there was a judgment of the court rendered on February 18, 1910, constituting the declaration of heirship; that there was a partition of the estate by deed No. 145 made before Notary Julio César González on April 1, 1910, in which the widow, Estebanía Báez, in accordance with the decision of the court of February 18, 1910, was awarded the sum of $4,292 as her usufructuary share as widow, and that this deed was approved by the court on May 28, 1910; that on April 1, 1910, by deed No. 29, before Notary Julio César González, making reference to document No. 145, the said Estebanía Báez renounced her usufructuary share and received instead thereof the sum of $2,500. The court rendered judgment in favor of the complainant in the sum of $833.33.

The appellant alleges that the payment made to her was made by an error of law and cannot be recovered.

In its opinion the court relied solely on section 1048 of the Civil Code, which is as follows:

"Section 1048.—A division made with a person who was believed to be an heir without being so shall be void."

And the court cites the comments of Manresa on the corresponding section, 1081, of the Spanish Civil Code, as follows:

"This article may be discussed under the following aspects:

"1. The sole heir divides the inheritance with another person who is not an heir, believing him to be an heir.

"2. There are several true heirs and all of them have taken part in the partition, but besides this, a share has been given to a stranger who had no right to the inheritance.

"3. One of the true heirs has been substituted erroneously in the partition by another person who is not an heir.

"To which of these cases does article 1081 refer? The partition is declared by the legislator to be null whenever it is made with a person who was believed to be an heir but who was not. As the law makes no distinction, it must be considered to apply to the three cases stated, but as the circumstances may be different in each case, it will be necessary to discuss them separately in order to determine the consequences of the nullity.

"Case 1. There is only one real heir, but believing that another person is also an heir, the former divides the inheritance with the latter. Here there is no other solution than that stated in article 1081. The partition is fundamentally null, but as there can be no partition when there is only one heir, a decree of nullity will have the effect of giving the entire property to the sole heir without the necessity of a new partition."

But we think the learned commentator had in mind a mistake of fact and not of law. His reference to a "stranger" could hardly refer to a widow or to a relative who was well known to be such widow or relative, but who by construction of law was decided to have no share in the estate, as happened when this court reversed the case of *Julbe* v. *Guzmán,* 16 P. R. R., 502, holding that a widower had no usufrusturay share in the intestate succession. That Manresa did not have in mind an error of law is further shown by his comments on section 1895 of the Spanish Code (identical to 1796 of our own). He says:

"Although article 1895 (equivalent to article 1796 of our Code) does not determine what kind of error caused the delivery to be made, of course it is understood that it must be an error of fact because an error of law benefits no one and therefore cannot originate the said quasi contract."

Sections 1232, 1233 and 1718 of our own Civil Code speak, among other things, of the "error" which would vitiate a

contract or compromise, and in this regard Manresa, volume 8, page 611, says:

"With respect to this last and most fundamental difference (error of fact and error of law), we will say before leaving the subject that generally the error to which this article (1266 Spanish Code) refers and which renders the consent void, is an error of fact and not of law, not even when the contract (compromise) is one involving exactly such rights as the parties may believe themselves to have. On this point in a judgment of February 12, 1898, it was held that the error which renders void contracts and compromises, as the case may be, for lack of consent, must affect the substance of the thing which is the object of the contract, according to articles 1261, 1265, 1266 and 1817 (1228, 1232, 1233 and 1718 of our Civil Code), and not the rights of the parties, particularly when the difference of opinion regarding these rights is what gave rise to the contract."

Modesto Falcón, on the same subject, volume 4, page 87, of his Spanish Civil Law, says:

"The Roman jurists distinguished between two classes of errror—error of fact and error of law. Under the Roman law error of fact rendered an obligation void. Error of law had no constant and uniform effect; sometimes it benefited and sometimes it injured the party against whom it was made.

"The modern codes all agree in providing that an error of law shall benefit no one. An obligation contracted on an error of law is a valid and effective contract, because all persons are bound to know the law."

And similar ideas are expressed in Escriche's Dictionary and by Scaevola, 1 C. C. C., page 111, to wit:

"Ignorance of laws already promulgated cannot be pleaded in a trial."

Now, while section 1048 contains the positive provision that a partition made with a person who was believed to be an heir without being so shall be void, yet we think that that section refers to the case where a person is not the heir he represents himself to be on account of the fact or condi-

tion which gives him such a character. Such a case would arise where a man said he was a relative of a dead person and had none of the blood of such decedent, or where a person was not in fact the widow of the dead man. The very. way in which the section is drawn would seem to indicate a mistake of fact. The legislator would hardly speak of a mistaken belief in the law because everyone is presumed to know the law.

The appellant also asserts that our written law is silent on what should be done in a case like the present one and that reference should be had to the general principles of law as expressed by section 7 of the Civil Code. We have also had recourse to the American and English jurisprudence in this regard, and an exhaustive study of the subject has been made in the case of *Scott* v. *Ford,* 68 L. R. A., 469, and we shall make some appropriate excerpts, to wit:

''The question involved is an ancient one, and has provoked much disputation, but the trend of modern authority is strongly in one direction, favorable to the theory that a mistake of law, within proper limitations, does not excuse, and that money paid under such mistake cannot be recovered back. There are two legal maxims involved in the inquiry, namely, *Ignorantia facti excusat, ignorantia juris non excusat* (ignorance of fact excuses, ignorance of the law does not excuse) ; and *volenti non fit injuria* (that to which a person assents is not esteemed in law an injury). Broom, Legal Maxims, 8th ed. 253, 268. As to the latter, Mr. Broom says (272) : 'There is also a large class of cases in which it has been held that money paid voluntarily cannot be recovered, although the original payment was not required by any equitable consideration; and these cases are very nearly allied in principle to those which have been considered in treating of a payment made in ignorance of the law.' We will therefore turn our attention more directly to the common understanding, in legal thought, of the former maxim. It is axiomatic, also, that 'every man is presumed to know the law,' and of this 'ignorance of the law does not excuse' is but a sequence. From these, coupled with that as to ignorance of fact, Mr. Broom derives the two following propositions: 'First that money paid with full knowledge of the facts, but through ignorance of the law, is not recoverable, if there

be nothing unconscientious in the retaining of it; and, secondly, that money paid in ignorance of the facts is recoverable, provided there have been no laches in the party paying it, and there was no ground to claim it in conscience.' * * *. *Brisbane* v. *Dacres,* 5 Taunt., 144, is one among the first cases bearing upon the question, and is most elaborately and learnedly considered. The case was this: The captain of a king's ship brought public treasury home in her, upon the public service and treasury of individuals, for his own emolument. He received freight for both, and paid over one-third of it, according to established usage in the navy, to the admiral under whose command he had sailed. Discovering, however, that the law did not compel captains to pay to admirals one-third of the freight, he brought an action as for money had and received, to recover it back from the admiral's executrix, and it was held that, as to public freight he could not recover the money back. Mr. Justice Gibbs, after stating the facts, makes use of this significant and unmistakable language: 'We must take this payment to have been made under a demand of right, and I think that where a man demands money of another as a matter of right, and that other, with a full knowledge of the facts upon which the demand is founded, has paid a sum, he never can recover back the sum he has so voluntarily paid. It may be that, upon a further view, he may form a different opinion of the law, and it may be his subsequent opinion may be the correct one. If we were to hold otherwise, I think many inconveniences may arise. There are many doubtful questions of law. When they arise the defendant has an option either to litigate the question, or to submit to the demand, and pay the money. I think that by submitting to the demand he that pays the money gives it to the person to whom he pays it, and makes it his, and closes the transaction between them. He who receives it has a right to consider it as his without dispute. He spends it in confidence that it is his; and it would be most mischievous and unjust if he who has acquiesced in the right by such voluntary payment should be at liberty, at any time within the statute of limitations, to rip up the matter, and recover back the money. He who received it is not in the same condition. He has spent it in the confidence it was his, and perhaps has no means of repayment * * *.

"The leading case in this country upon the other side of the controversy is, perhaps, *Clarka* v. *Dutcher,* 9 Cow. 674; the court, speaking through Mr. Justice Sutherland, saying that 'although there are a few *dicta* of eminent judges to the contrary, I consider the current and weight of authorities as clearly establishing the position that where money is paid with a full knowledge of all the facts and

circumstances upon which it is demanded, or with the means of such knowledge, it cannot be recovered back upon the ground that the party supposed he was bound in law to pay it, when in truth he was not. He shall not be permitted to allege his ignorance of law; and it shall be considered a voluntary payment.' Another case is *Mowatt* v. *Wright*, 1 Wend., 355, 19 Am. Dec., 508, where it is said: 'The action for money had and received, in general, lies for money which, *ex æquo et bono*, the defendant ought to refund as for money paid by mistake, or upon a consideration which happens to fail, or for money obtained by imposition, or extortion, or oppression, or by taking an undue advantage of the plaintiff's situation. 2 Burr, 1012. A mistake which entitles a party to sustain this action must be a mistake of fact. Where there is no fraud nor mistake in matter of fact, if the law was mistaken, the rule applies that *ignorantia juris non excusat*. 2 Dougl., 471. An error of fact takes place either when some fact which really exists is unknown, or some fact is supposed to exist which really does not exist. A later case is *Champlin* v. *Laytin*, 18 Wend., 407, 31 Am. Dec., 382, where it is held that mere mistake in law is not, in the absence of fraud, surprise, or undue influence, sufficient for relief in equity. In the course of an opinion by Mr. Justice Brownson, he affirms that 'the civilians are divided on the question whether money paid under a mistake is liable to repetition. But it is the setted doctrine of Westminster Hall that money paid with a full knowledge of the facts cannot be recovered back on the ground that the party was ignorant of the law.' *Hurd* v. *Hall*, 12 Wis., 125, is a well-considered case by Mr. Chief Justice Dixon, wherein he defines a mistake of law thus: 'A mistake of law happens when a party, having full knowledge of the facts, comes to an erroneous conclusion as to their legal effect. It is a mistaken opinion or inference, arising from an imperfect or incorrect exercise of the judgment, upon facts as they really are; and, like a correct opinion, which is law, necessarily presupposes that the person forming it is in full possession of them.' "

See also *Elliott* v. *Swartout*, 10 Pet., 137; *Upton, Assignee*, v. *Tribilcock*, 91 U. S., 50; *Allen* v. *Galloway*, 30 Fed., 466; *Storrs* v. *Baker*, 10 A. D., 316, and notes.

It will be observed that in the decision of *Scott* v. *Ford*, *supra*, the learned judge says that there is a dispute among

civilians as to whether there is a relief from a mistake of law, but Modesto Falcón, and likewise Manresa in the foregoing quotations, show that the law is very similar both in the English and Spanish jurisprudence.

As *Scott* v. *Ford, supra,* also points out, there are courts that hold that a recovery may be had where there is a voluntary payment under a mistake of law. While we think section 1048 refers to a mistake of fact, we do not think it necessary in this case to decide in general whether a voluntary payment made under a mistake of law can ever be recovered. But we do hold, in any event, that such a mistake should be one wherein the person who receives the money must be bound in justice and good conscience to refund the same, as indicated by the authorities. Here, however, up to the time of our decision in *Julbe* v. *Guzmán, supra,* the prevailing opinion of the bench and the bar had been that a widow was entitled to her usufructuary share in the estate of her husband. The money was paid over in that belief. The husband may even have died in that belief. We see no principle of justice in this case under the authorities that would cause this court to order the refund even if a voluntary payment under mistake of law should sometimes be recoverable.

But there is another aspect to this particular case. After the partition had been made and the widow was found to be entitled to the sum of $4,292, the parties signed another deed by which the widow renounced her usufructuary share and received the sum of $2,500 instead. This was a compromise agreement and its avoidance or annulment falls under section 1718 of the Civil Code. Manresa, in the second citation *supra,* makes it clear that the error which would vitiate a compromise must be one of fact.

Furthermore, the proof in this case does not follow the pleadings. The complaint asks for the nullity of the declaration of heirship and the partition, while the proof shows

a super-imposed agreement of compromise. This constitutes a variance.

The judgment must be reversed.

*Reversed.*

Mr. Justice del Toro concurred.

Chief Justice Hernández and Justice Aldrey signed, stating that they agreed with the judgment for the reasons stated in a separate concurring opinion.

CONCURRING OPINION OF MR. CHIEF JUSTICE HERNÁNDEZ AND MR. JUSTICE ALDREY.

By a judicial decision of February 18, 1909, the intestate heirs of Ramón Arandes were decreed to be his mother, Clara Virella, and also his widow, Estebanía Báez, of an usufructuary estate. Subsequently the mother and widow made a partition of the property inherited.

The complaint which originated this case prays for the annulment of the declaration of heirship as well as of the partition of the property, alleging that the widow had no right to an usufructuary estate jointly with the ancestor and that, therefore, the partition of the property was made with a person who was erroneously considered an usufructuary heir.

The lower court sustained the prayer of the complaint in the judgment appealed from.

We are of the opinion that the plaintiff has no cause of action because the widow, Estebanía Báez, had a right to an usufructuary estate in the property of her husband, Ramón Arandes, who died intestate, and in support of our opinion we refer to the same reasons stated in the dissenting opinion handed down when a majority of this court held to the contrary on June 15, 1910, in the case of *Julbe* v. *Guzmán,* 16 P. R. R., 502, 518.

But, on the hypothesis that Estebanía Báez could not be considered to have any hereditary right in the intestate inheritance of Ramón Arandes and that she was not his usufruc-

tuary heir, we are of the opinion that, in view of the special circumstances of this case, she could not be compelled to return what she received as an usufructuary estate. Under the foregoing hypothesis we concur in the reasoning of the opinion which is the basis of the judgment rendered by this court to-day.

Whether Estebanía Báez has or has not a right to an usufructuary estate in the intestate inheritance of her husband, Ramón Arandes, the judgment appealed from should be reversed.